**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| JAMES E. BOONE and VOLT INFORMATION SCIENCES, INC., | : : : : | |
| Plaintiffs, | : : | CIVIL ACTION NO. 1:11-CV-1175-RWS |
| v. | : : | |
| CORESTAFF SUPPORT SERVICES, INC. and IMPELLAM GROUP PLC, | : : : : | |
| Defendants. | : : | |

**ORDER**

This case comes before the Court on Plaintiffs' Motion for Summary Judgment [5], Defendants' Motion to Dismiss [7], Defendants' Motion to Disqualify[8], and Plaintiffs' Motion to Stay Discovery [26]. After considering the record, the Court enters the following Order.

**Background**

Plaintiffs filed this action on April 22, 2011 seeking a declaration that restrictive covenants contained in a non-compete agreement ("Non-Compete") [1-2] entered into between James E. Boone and Corestaff Support Services,

Inc.[1] ("Corestaff") in association with an employment agreement ("Employment Agreement") [1-1] are unenforceable as a matter of law and seeking injunctive relief preventing Defendants from enforcing the covenants, instituting an action against Plaintiffs for violation of the covenants, or precluding Boone's employment with Volt Information Sciences, Inc.[2] ("Volt").  (Dkt. [1] at 27). Both the Non-Compete and Employment Agreement were signed by Boone and Defendants at the offices of Corestaff and Impellam in Atlanta, Georgia.  (Dkt. [18] at 1).

Boone began employment with Corestaff, as its President and CEO, in December 2008 by entering into the Employment Agreement.  (Complaint, Dkt. [1] at ¶¶ 16, 17, 30).  In association with the Employment Agreement, Boone signed the Non-Compete which, among other things, restricts his engagement or participation in the business of staffing services and temporary employment services or any other business in which Corestaff and its affiliates engage in, upon leaving Corestaff.  (Id. at ¶¶ 18-29).  As President and CEO of Corestaff, Boone lived and worked in Georgia.  (Id. at ¶ 33).

---

[1] Corestaff is a California corporation with its principal place of business in Texas.  (Dkt. [1] at ¶ 3; Dkt. [7-4] at ¶ 6).

[2] Volt is a New York corporation with its principal place of business in New York.  (Dkt. [1] at ¶ 2).

On April 11, 2011, Boone hand-delivered to Cheryl Jones, Impellam Group PLC's[3] ("Impellam") Chairman, and Boone's boss, sixty days written notice of his intent to resign his employment with Corestaff. (Id. at ¶ 34). Jones informed Boone that Defendants "will definitely enforce the [NCA]." (Id. at ¶ 37). Boone intends to commence employment with Volt, a direct competitor of Corestaff, on June 13, 2011. (Id. at ¶¶ 12, 39). Boone's positions with Volt–including group CEO of ProcureStaff Technologies Ltd., a subsidiary of Volt, and CEO of Volt Consulting Group, a unit of another Volt Subsidiary–will be based in Georgia. (Id. at ¶ 41). In the course of his employment with Volt, Boone will solicit, or attempt to solicit, current or former Corestaff customers to purchase competing products and services from Volt and solicit the employment of former employees or agents of Corestaff or Impellam and its subsidiaries. (Id. at ¶ 45, 46). If the restrictive covenants in the Non-Compete are enforceable, Boone's activities on behalf of Volt will violate one or more of these covenants. (Id. at ¶ 47). Plaintiffs therefore believe that Volt will take legal action to prevent Boone from working for it and have thus filed the present action. (Id. at ¶ 49).

---

[3] Impellam is a public limited company that is organized in England and Wales and has its principal place of business in Luton, United Kingdom. (Dkt. [1] at ¶ 4; Dkt. [7-4] at ¶ 8).

3

On May 6, 2011, Corestaff and Impellam, defendants in this action, along with Corporate Employment Resources, Inc.[4] ("CER"), Guidant Group, Inc.[5] ("Guidant"), Corporate Services Groups Holdings, Inc.[6] ("CSGH"), and The Corporate Services Group, Ltd.[7] ("CSG") (collectively the "Delaware Plaintiffs"), filed suit against Plaintiffs in a Delaware court ("Delaware Action"). (Complaint in Delaware Action, Dkt. [7-4]). CER, Guidant, and Corestaff are all subsidiaries of CSGH (collectively the "U.S. Companies"). (Id. at ¶¶ 5, 12). CSGH is a wholly owned subsidiary of CSG, which is a wholly owned subsidiary of Impellam. (Id. at ¶¶ 5, 7). After entering into the Employment Agreement and Non-Compete, Boone was elected by the written consent of CSG to be a director of CSGH and was elected by written consent of CSGH to be a director on the boards of Corestaff, CER, and Guidant. (Id. at ¶ 18). Boone was also elected by the Boards of Directors of CSGH, Corestaff,

---

[4] CER is a Delaware corporation with its principal place of business in Texas. (Dkt. [7-4] at ¶ 3).

[5] Guidant is Delaware corporation with its principal place of business in Texas. (Dkt. [7-4] at ¶ 4).

[6] CSGH is a Delaware corporation with its principal place of business in Texas. (Dkt. [7-4] at ¶ 5).

[7] CSG is a limited company organized in England and Wales with its principal place of business in Luton, United Kingdom. (Dkt. [7-4] at ¶ 7).

4

and CER to serve as President of these companies and elected by the Board of Directors of Guidant to serve as its Vice President. (Id.). In practice, he was the head of Impellam's United States operations. (Id.). The Delaware Plaintiffs filed suit to prevent Boone "from violating his fiduciary duties and contractual obligations owed to [Delaware] Plaintiffs by taking their confidential information and trade secrets and using them in the employ of a direct competitor, Volt." (Id. at ¶ 1). The Delaware Action was subsequently removed to the U.S. District Court for the District of Delaware.

Defendants seek to have this action stayed or dismissed in favor of the Delaware Action. Neither the Employment Agreement nor the Non-Compete has a forum selection clause prescribing that suit be brought in Delaware. Both the Employment Agreement and the NCA have choice-of-law provisions stating that Delaware law is to govern both agreements. (Dkt. [1-1] at ¶ 15(a); (Dkt. [1-2] at ¶ 4(d)).

## Discussion

The Declaratory Judgment Act (the "Act"), 28 U.S.C. § 2201, *et seq.*, states that "any Court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party

5

seeking such declaration, whether or not further relief is or could be sought."

28 U.S.C. § 2201. The Supreme Court has noted that the Act

> has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants . . . . The statute's textual commitment to discretion and breadth of leeway we have always understood it to suggest, distinguish the declaratory judgment context from other areas of the law in which concepts of discretion surface.

Wilton v. Seven Falls Co., 515 U.S. 277, 286-287 (1995) (citations omitted).

"The factors relevant in deciding whether to hear a declaratory judgment action are equitable in nature." Manuel v. Convergys Corp., 430 F.3d 1132, 1135 (11th Cir. 2005)(citation omitted). Some relevant factors include: (1) the convenience of the witnesses; (2) location of documents and access to sources of evidence; (3) convenience of the parties; (4) the locus of operative facts; (5) a forum's familiarity with the governing law; (6) the weight accorded a plaintiff's choice of forum; and (7) trial efficiency and the interests of justice, based on the totality of the circumstances. Id. at 1135 n.1.

After considering these factors, in light of the totality of the circumstances, the Court will not exercise its jurisdiction over Plaintiffs' request for declaratory judgment. In reaching this conclusion, the Court finds that compelling circumstances exist to not rigidly apply the first-filed rule in

6

this instance.[8]  Defendants' Motion to Dismiss [7] is **GRANTED**; Plaintiffs'

Complaint for Declaratory Judgment and Injunctive Relief [1] is **DISMISSED**.

Plaintiffs' Motion for Summary Judgment [5], Defendants' Motion to

Disqualify [8], and Plaintiffs' Motion to Stay Discovery [26] are **DENIED as**

**moot**.

> A.     This action was filed in anticipation of litigation.

The Eleventh Circuit has noted that one equitable consideration in

determining whether to exercise jurisdiction over a declaratory judgment action

is whether such action was filed in anticipation of another pending proceeding.

Ven-Fuel, Inc. v. Dept. of Treasury, 673 F.2d 1194, 1195 (11th Cir. 1982).

Defendants argue that Plaintiffs filed this action in anticipation of the Delaware

Action.  Plaintiffs state in their Complaint that when Boone gave Jones his

resignation, she stated that "Defendants 'will definitely enforce the Non-

Compete.'" (Dkt. [1] at ¶ 37).  Plaintiffs argue, however, that Jones's statement

is insufficient to render this action in anticipation of litigation and does not

---

[8] "Where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first filed rule." Manuel v. Convergys Corp., 430 F.3d 1132, 1135 (11th Cir. 2005)(citations omitted).  The party objecting to jurisdiction in the first-filed forum must carry the burden of demonstrating "compelling circumstances" to warrant an exception to the first-filed rule.  Id.

provide a reason for this Court to not exercise jurisdiction over this action. The Court finds Plaintiffs argument unpersuasive.

Plaintiffs argue that in order "[t]o constitute an improper anticipatory filing, a lawsuit must be triggered by a direct threat of imminent litigation," and Jones's statement does not represent such a threat. Manuel v. Convergys Corp., No. 1:04-CV-1279, 2004 WL 5545025, *3 (N.D. Ga. Oct. 18, 2004). Plaintiffs reliance on the district court decision in Manuel is inapposite, because as the Eleventh Circuit noted, there was no threat of legal proceedings, but rather Manuel's former employer continued to seek assurances that his new job would not violate their noncompetition agreement. Manuel v. Convergys Corp., 430 F.3d 1132, 1137 (11th Cir. 2005). The Court also finds Geltech Solutions, Inc. v. Marteal, Ltd., No. 09-CV-81027, 2010 WL 1791423 (S.D. Fla. May 5, 2010), distinguishable. The court in that case found that a cease and desist letter that threatened unspecified future legal action did not make the subject action anticipatory. Id. at *8. The court in that case held that the filing of the subsequent action several months after the initial action was filed supported the finding that the initial action was not in anticipation of imminent litigation. Id. In this case, the Delaware Action was filed less than one month after this action was filed.

8

More importantly than the span of time separating the filing of this action and the Delaware Action is that this action was filed within hours of Impellam's Chairman telling Boone that "Defendants 'will definitely enforce the Non-Compete.'" (Dkt. [1] at ¶ 37). Plaintiffs argue that this does not constitute a sufficient threat of litigation, yet Plaintiffs assert in their Complaint that they "believe that Defendants will take legal action to prevent Boone from working for Volt." (Id. at ¶ 49). Plaintiffs do not offer an alternate basis for this belief if not Jones's statement and do not offer an alternate explanation for Jones's statement if it is not to be understood as a threat of litigation. Jones's statement that the Non-Compete will definitely be enforced is comparable to the letter at issue in Rolison, in which the defendant stated that if plaintiff did not purchase an appeal bond, "he will be forced to protect himself." Lexington Ins. Co. v. Rolison, 434 F. Supp. 2d 1228, 1240 (S.D. Ala. 2006). The plaintiff in that action argued that the letter did not constitute a direct threat of litigation. Id. The court stated:

> This position is not credible. The January 10 letter cannot reasonably be construed as anything other than a direct threat of litigation; indeed, the letter cannot reasonably be construed as anything other than a direct threat of litigation; indeed the Court is at a loss to envision (and [plaintiff] does not suggest) what [defendant] might have done to "protect himself" other than to sue [the] insurers (including [plaintiff]) on various coverage and bad-

9

> faith grounds in an effort to force the issue . . . . [Plaintiff's] act of responding to this revelation by quickly filing a declaratory judgment action of its own cannot reasonably be construed as anything other than anticipatory filing."

Id. The Eleventh Circuit's decision in Ven-Fuel also does not require as specific a threat of litigation as Plaintiffs claim is warranted. In that case, the United States Customs Service advised the plaintiff that if it did not pay an assessed penalty "forthwith," judicial proceedings would be instituted to collect the penalty. 673 F.2d at 1195. The Eleventh Circuit found this conditional threat of litigation to be sufficient to find plaintiff's filing to be in anticipation of litigation. Id. In this case, a threat to "definitely enforce the Non-Compete" cannot be seen as anything but a direct threat of impending litigation.

The Court is cognizant that an anticipatory filing does not mandate dismissal, but rather "remains one equitable factor among many that a district court can consider in determining whether to hear a declaratory judgment action." Manuel, 430 F.3d at 1135-36. However, the filing of this action in anticipation of the Delaware Action weighs in favor of dismissal.

B.  This action does not encompass the entire controversy.

Another factor to consider in determining whether to exercise jurisdiction over a declaratory judgment action is whether "a pending proceeding in another

court will fully resolve the controversy between the parties." Ven-Fuel, 673 F.2d at 1195.  While this action includes Corestaff and Impellam as parties, it does not include CSG, CSGH, CER, and Guidant, all of whom are plaintiffs in the Delaware Action.  The Delaware action also includes Delaware state law claims not asserted here.  While Plaintiffs Volt and Boone seek a judgment in this action declaring that the restrictive covenants contained in the Non-Compete are unenforceable, such a declaration will not fully resolve the controversy between the parties.  In addition to serving on the board of directors of Corestaff, Boone was also on the board of CSGH, CER, and Guidant.  Also, in addition to being the president of Corestaff, Boone was the president of CER and CSGH and the vice president of Guidant.  The Delaware Action asserts that Boone owed a fiduciary duty to these entities and in accepting employment with Volt and asserting that he intends to solicit Corestaff's current or former customers, he intends to breach that duty by, among other things, sharing confidential customer information with a competitor.  The Delaware Action also involves claims under Delaware law for aiding and abetting breach of fiduciary duty, intentional interference with contract, and breach of contract.  The fact that the Delaware Action encompasses the entirety of the dispute,

11

including claims and parties absent from this action, weighs in favor of dismissal.

  C. <u>This Court would likely apply Delaware law.</u>

In determining the validity of the Non-Compete this Court would likely apply Delaware law, and this weighs strongly in favor of dismissal. The District Court for the District of Delaware, being more familiar with Delaware law, is better equipped to adjudicate this dispute.

Both the Employment Agreement and the Non-Compete contain Delaware choice-of-law provisions. In Georgia, the law of the jurisdiction chosen by parties to a contract govern their contractual rights unless the application of the other jurisdiction's law violates Georgia's public policy. <u>Convergys Corp. v. Keener</u>, 582 S.E.2d 84, 85 (Ga. 2003); <u>Rayle Tech, Inc. v. DeKalb Swine Breeders, Inc.</u>, 133 F.3d 1405, 1409 (11th Cir. 1998) (citations omitted). Therefore, the threshold question is whether the application of Delaware law in this context violates Georgia's public policy. Traditionally, Georgia has had a strong public policy of disfavoring restrictive covenants in employment contracts. <u>Keener v. Convergys Corp.</u>, 342 F.3d 1264, 1268 (11th Cir. 2003). One manifestation of this policy preference was Georgia's refusal to employ the "blue pencil" doctrine of severability. <u>Id.</u> However, the Georgia

12

General Assembly has recently enacted a significant shift in Georgia public policy towards restrictive covenants in employment contracts.

On May 11, 2011, Georgia's new restrictive covenant law ("New Act") was enacted. The law itself is not retroactive and does not apply to contracts entered into before its enactment. Plaintiffs argue the prospective application of the New Act can have no impact on this action. Plaintiffs are correct that the New Act is not applicable to the Employment Agreement or Non-Compete, but such an argument misses the point. The threshold question is not whether the New Act applies in this case, but whether this Court in determining the enforceability of restrictive covenants in the Non-Compete will apply the Delaware choice-of-law provision contained therein. The answer to this question depends upon whether Georgia's public policy is in conflict with the application of Delaware law. The New Act expresses the current public policy of Georgia in relation to restrictive covenants in employment agreements.

With the enactment of the New Act, the Georgia General Assembly announced a shift in Georgia's public policy, such that it is not in contravention of Delaware law. Compare O.C.G.A. § 13-8-53(a) ("enforcement of contracts that restrict competition during the term of a restrictive covenant, so long as such restrictions are reasonable in time, geographic area, and scope of

13

prohibited activities, shall be permitted"), with Am. Homepatient, Inc. v. Collier, 2006 WL 1134170 (Del. Ch. 2006) ("To be enforceable, a covenant not to compete must . . . be reasonable in scope and duration, both geographically and temporally . . . ."). The New Act specifically approves reasonable restrictive covenants that limit an employee's ability to solicit his or her former employer's customers. O.C.G.A. § 13-8-53(b). Any restraint that lasts for two years or less in duration shall be presumed to be temporally reasonable. O.C.G.A. § 13-8-57(b)(5). The New Act also expresses a preference for construing "a restrictive covenant to comport with the reasonable intent and expectations of the parties to the covenant and *in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement*." O.C.G.A. § 13-8-53(a) (emphasis added).  Finally, the New Act expresses Georgia's policy preference for the "blue pencil" rule, which allows a court to "modify a covenant that is otherwise void and unenforceable so long as the modification does not render the covenant more restrictive with regard to the employee than as originally drafted by the parties." O.C.G.A. § 13-8-53(d).

Delaware law is in accord with Georgia's new public policy position on restrictive covenants in employment agreements.  Therefore, the Court applying Georgia's choice-of-law rules would honor the parties' selection of Delaware

14

law in determining the enforceability of the restrictive covenants in the Non-Compete.  The application of Delaware law to the restrictive covenants weighs in favor of dismissal, because the District Court for the District of Delaware is more familiar with that state's substantive law and is in a better position to interpret and apply it.

      D.    <u>Other Considerations</u>

The Court is cognizant that there are factors that weigh in favor of exercising jurisdiction over this declaratory judgment action.  Most compellingly, Boone is a Georgia citizen who entered into the Employment Agreement in Georgia, and under the Employment Agreement worked primarily from Georgia.  It may be that this forum provides greater access to relevant documents and sources of proof.  It is not clear that this forum is more convenient than Delaware for the parties or witnesses.  Granted Boone is a resident of Georgia, but no single corporate entity involved in this dispute has its principal place of business in the state.  Further, Jones, with whom Boone negotiated and signed the Employment Agreement and Non-Compete resides in the United Kingdom.  When considering the totality of the circumstances, particularly that this action was filed in anticipation of the Delaware Action, that the Delaware Action encompasses the entirety of the present dispute,

15

including parties and claims not present in this action, and that this Court would need to apply Delaware law, the Court will decline to exercise its jurisdiction under the Declaratory Judgment Act.

## Conclusion

For the aforementioned reasons, Defendants' Motion to Dismiss [7] is **GRANTED**, Plaintiffs' Motion for Summary Judgment [5] is **DENIED as moot**, Defendants' Motion to Disqualify [8] is **DENIED as moot**, and and Plaintiffs' Motion to Stay Discovery [26] is **DENIED as moot**.

**SO ORDERED**, this  9th  day of June, 2011.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)