**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| JAMES E. BOONE and VOLT INFORMATION SCIENCES, INC., | : : : : | |
| Plaintiffs, | : : | CIVIL ACTION NO. 1:11-CV-1175-RWS |
| v. | : : | |
| CORESTAFF SUPPORT SERVICES, INC. and IMPELLAM GROUP PLC, | : : : : | |
| Defendants. | : : | |

**ORDER**

This case comes before the Court on Plaintiffs' Motion to Alter or Amend Judgment, or in the Alternative, for Reconsideration [30] and Plaintiffs' Motion for Hearing [33]. After considering the record, the Court enters the following Order.

As an initial matter, the Court does not find a hearing on Plaintiffs' Motion for Reconsideration [30] necessary to resolve the issues presented therein. Plaintiffs' Motion for Hearing [33] is **DENIED**.

AO 72A
(Rev.8/82)

## Background

Plaintiffs filed this action on April 22, 2011 seeking a declaration that restrictive covenants contained in a non-compete agreement ("Non-Compete") [1-2] entered into between James E. Boone and Corestaff Support Services, Inc.[1] ("Corestaff") in association with an employment agreement ("Employment Agreement") [1-1] are unenforceable as a matter of law and seeking injunctive relief preventing Defendants from enforcing the covenants, instituting an action against Plaintiffs arising from Boone's employment with Corestaff, or precluding Boone's employment with Volt Information Sciences, Inc.[2] ("Volt"). (Dkt. [1] at 27).  Both the Non-Compete and Employment Agreement were signed by Boone and Defendants at the offices of Corestaff and Impellam in Atlanta, Georgia.  (Dkt. [18] at 1).

Boone began employment with Corestaff, as its President and CEO, in December 2008 by entering into the Employment Agreement. (Complaint, Dkt. [1] at ¶¶ 16, 17, 30). In association with the Employment Agreement, Boone signed the Non-Compete which, among other things, restricts his engagement or

---

[1] Corestaff is a California corporation with its principal place of business in Texas.  (Dkt. [1] at ¶ 3; Dkt. [7-4] at ¶ 6).

[2] Volt is a New York corporation with its principal place of business in New York.  (Dkt. [1] at ¶ 2).

2

participation in the business of staffing services and temporary employment services or any other business in which Corestaff and its affiliates engage in, upon leaving Corestaff.  (Id. at ¶¶ 18-29).  As President and CEO of Corestaff, Boone lived and worked in Georgia.  (Id. at ¶ 33).

On April 11, 2011, Boone hand-delivered to Cheryl Jones, Impellam Group PLC's[3] ("Impellam") Chairman, and Boone's boss, sixty days written notice of his intent to resign his employment with Corestaff.  (Id. at ¶ 34).  Jones informed Boone that Defendants "will definitely enforce the [NCA]."  (Id. at ¶ 37).  Boone's positions with Volt–including group CEO of ProcureStaff Technologies Ltd., a subsidiary of Volt, and CEO of Volt Consulting Group, a unit of another Volt Subsidiary–will be based in Georgia.  (Id. at ¶ 41).  In the course of his employment with Volt, Boone will solicit, or attempt to solicit, current or former Corestaff customers to purchase competing products and services from Volt and solicit the employment of former employees or agents of Corestaff or Impellam and its subsidiaries.  (Id. at ¶ 45, 46).  If the restrictive covenants in the Non-Compete are enforceable, Boone's activities on behalf of Volt will violate one or more of these covenants.  (Id. at ¶

---

[3] Impellam is a public limited company that is organized in England and Wales and has its principal place of business in Luton, United Kingdom.  (Dkt. [1] at ¶ 4; Dkt. [7-4] at ¶ 8).

3

47). Plaintiffs therefore believe that Volt will take legal action to prevent Boone from working for it and have thus filed the present action. (Id. at ¶ 49).

On May 6, 2011, Corestaff and Impellam, defendants in this action, along with Corporate Employment Resources, Inc.[4] ("CER"), Guidant Group, Inc.[5] ("Guidant"), Corporate Services Groups Holdings, Inc.[6] ("CSGH"), and The Corporate Services Group, Ltd.[7] ("CSG") (collectively the "Delaware Plaintiffs"), filed suit against Plaintiffs in a Delaware court ("Delaware Action"). (Complaint in Delaware Action, Dkt. [7-4]). CER, Guidant, and Corestaff are all subsidiaries of CSGH (collectively the "U.S. Companies"). (Id. at ¶¶ 5, 12). CSGH is a wholly owned subsidiary of CSG, which is a wholly owned subsidiary of Impellam. (Id. at ¶¶ 5, 7). After entering into the Employment Agreement and Non-Compete, Boone was elected by the written consent of CSG to be a director of CSGH and was elected by written consent of

---

[4] CER is a Delaware corporation with its principal place of business in Texas. (Dkt. [7-4] at ¶ 3).

[5] Guidant is Delaware corporation with its principal place of business in Texas. (Dkt. [7-4] at ¶ 4).

[6] CSGH is a Delaware corporation with its principal place of business in Texas. (Dkt. [7-4] at ¶ 5).

[7] CSG is a limited company organized in England and Wales with its principal place of business in Luton, United Kingdom. (Dkt. [7-4] at ¶ 7).

CSGH to be a director on the boards of Corestaff, CER, and Guidant. (Id. at ¶ 18). Boone was also elected by the Boards of Directors of CSGH, Corestaff, and CER to serve as President of these companies and elected by the Board of Directors of Guidant to serve as its Vice President. (Id.). In practice, he was the head of Impellam's United States operations. (Id.). The Delaware Plaintiffs filed suit to prevent Boone "from violating his fiduciary duties and contractual obligations owed to [Delaware] Plaintiffs by taking their confidential information and trade secrets and using them in the employ of a direct competitor, Volt." (Id. at ¶ 1). The Delaware Action was subsequently removed to the U.S. District Court for the District of Delaware.

Defendants sought to have this action stayed or dismissed in favor of the Delaware Action. Neither the Employment Agreement nor the Non-Compete has a forum selection clause prescribing that suit be brought in Delaware. Both the Employment Agreement and the NCA have choice-of-law provisions stating that Delaware law is to govern both agreements. (Dkt. [1-1] at ¶ 15(a); (Dkt. [1-2] at ¶ 4(d)).

On June 9, 2011, the Court issued an Order (the "Order") [28] granting Defendant's Motion to Dismiss [7] and denying as moot Plaintiffs' Motion for Summary Judgment [5], Defendants' Motion to Disqualify [8], and Plaintiffs'

Motion to Stay Discovery [26].  Plaintiffs' Motion for Reconsideration asks the Court to revisit its rulings as to the Motion to Dismiss that: (1) a recent shift in Georgia's public policy towards restrictive covenants in employment agreements allowed for the application of Delaware law without violating Georgia's public policy; (2) this action was filed in response to a threat of litigation; and (3) this action does not encompass the entire controversy between the parties.  (Dkt. [30] at 2).  The Court now examines Plaintiffs' arguments.

## Discussion

### I.    Motion for Reconsideration [30]

#### A.    Standard for Reconsideration

Under the Local Rules of this Court, "[m]otions for reconsideration shall not be filed as a matter of routine practice[,]" but rather, only when "absolutely necessary." LR 7.2(E), NDGa.  Such absolute necessity arises where there is "(1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact." Bryan v. Murphy, 246 F. Supp. 2d 1256, 1258-59 (N.D. Ga. 2003).  However, a motion for reconsideration may not be used "to present the court with arguments already heard and dismissed or to repackage familiar arguments to test whether

6

the court will change its mind." Id. at 1259. Furthermore, "[a] motion for reconsideration is not an opportunity for the moving party . . . to instruct the court on how the court 'could have done it better' the first time." Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995), aff'd, 87 F.3d 1242 (11th Cir. 1996).

    B.    Georgia's Public Policy

The Court previously stated:

> In determining the validity of the Non-Compete this Court would likely apply Delaware law, and this weighs strongly in favor of dismissal. The District Court for the District of Delaware, being more familiar with Delaware law, is better equipped to adjudicate this dispute.
>     Both the Employment Agreement and the Non-Compete contain Delaware choice-of-law provisions. In Georgia, the law of the jurisdiction chosen by parties to a contract govern their contractual rights unless the application of the other jurisdiction's law violates Georgia's public policy. Convergys Corp. v. Keener, 582 S.E.2d 84, 85 (Ga. 2003); Rayle Tech, Inc. v. DeKalb Swine Breeders, Inc., 133 F.3d 1405, 1409 (11th Cir. 1998) (citations omitted). Therefore, the threshold question is whether the application of Delaware law in this context violates Georgia's public policy.

(Dkt. [28] at 12). Relying upon the passage of a new restrictive covenant law in Georgia (the "New Act") as indicative of a shift in Georgia's public policy, the Court found that Delaware law as to restrictive covenants in employment agreements was not violative of Georgia's public policy as reflected by the New

7

Act. (Id. at 12-15). In reaching this conclusion, the Court overlooked the decision of the Court of Appeals of Georgia in <u>Bunker Hill Int'l, Ltd. v. Nationsbuilder Ins. Servs., Inc.</u>, 710 S.E.2d 662 (2011), cited by Plaintiffs in their Response to the Motion to Dismiss. (Dkt. [18] at 17).

<u>Bunker Hill</u> is analogous to the facts of this action. In that case, an employee and his new employer brought an action seeking a declaration that the restrictive covenants the employee entered into with his previous employer are unenforceable under Georgia law. Id. at 664. The employee in that case entered into an employment agreement with his previous employer in April 2006 and June 2008, before the effective date of the New Act. Id. The court's decision, coming after the effective date of the New Act, relied upon Georgia's public policy at the time of the agreement to hold that the non-compete and non-solicitation provisions of the agreements are unenforceable in Georgia. Id. at 666. The court specifically noted that "[b]ecause the agreement at issue was entered into in 2008, we apply the law of restrictive covenants as it existed before the November 2010 ratification of [the New Act]." Id. at 665 n.1. Furthermore the Court stated that "Georgia courts do not edit or 'blue-pencil' employment agreements in order to salvage some provisions when others have

8

been found void." Id. at 667 (citation omitted).   The New Act, in contrast allows for the application of the "blue-pencil" rule.  O.C.G.A. § 13-8-53(d).

The Court of Appeals of Georgia recently reached the same conclusion it reached in Bunker Hill in two other cases.  See Gordon Document Products, Inc. v. Serv. Techs., Inc., 708 S.E.2d 48, 52 n.5 (2011) ("Our analysis in this case is unaffected by any recent legislative proposals or changes.  See O.C.G.A. § 13-8-2.1(a) and applicability date contained in Ga. L. 2009, p. 231, § 4.") and Cox v. Altus Healthcare & Hospice, Inc., 706 S.E.2d 660, 663-664 (2011) ("O.C.G.A. § 13-8-2.1(a) authorizes covenants 'that restrain in a reasonable manner.'  However, Ga. L. 2009, p. 231, § 4 provides that the new version of the statute 'shall not apply in actions determining the enforceability of restrictive covenants entered into before' [its] ratification.  We therefore apply the law of restrictive covenants as it existed before that event.").  Having examined Bunker Hill, Gordon Document Products, and Cox, the Court recognizes that it made a clear error of law in it previous Order [28] in determining that the public policy embodied in the New Act should apply to the Non-Compete.  Rather, in determining whether the application of Delaware law creates a conflict, the Court should apply Georgia's public policy as it existed at the time Boone entered into the Non-Compete.

9

If a restrictive covenant is not enforceable under Georgia law, it is violative of Georgia's public policy and a choice-of-law provision choosing the law of a foreign jurisdiction may not be applied to enforce the covenant. Convergys Corp. v. Keener, 582 S.E.2d 84, 85-86 (Ga. 2003). Under Georgia law, "[r]estrictive covenants in employment contracts are in partial restraint of trade and are enforceable only if strictly limited in time and territorial effect and are otherwise reasonable considering the business interest of the employer sought to be protected and the effect on the employee." Bunker Hill, 710 S.E.2d at 666 (citation omitted). Further, "if any of the sub-paragraphs of the restrictive covenant are invalid, the entire covenant must fall." Uni-Worth Enters. v. Wilson, 261 S.E.2d 572, 575 (Ga. 1979). Section 2(e) of the Non-Compete Agreement states: "The Restricted Period shall be tolled (shall not run) for so long as [Boone] is in breach of any of his obligations under . . . Section 2 [of the Non-Compete]." Such a tolling provision is unenforceable under Georgia law. See ALW Marketing Corp. v. McKinney, 421 S.E.2d 565, 568 (Ga. Ct. App. 1992) (holding that a "tolling provision potentially extends the duration of the covenant without limit and renders it unreasonable and unenforceable on its face" (citations omitted)). In contrast, Delaware courts will enforce the tolling of restrictive covenants. See Concord Steel, Inc. v.

10

Wilmington Steel Processing Co., Inc., 2009 WL 3161643, at *15 (Del. Ch. Sept. 30, 2009) (issuing injunction that accounts for the tolling of a restrictive covenant).  At a minimum the tolling provision of the Non-Compete is unenforceable in Georgia and would likely be enforced in a Delaware court.  Because the application of Delaware law to the Non-Compete is violative of Georgia's public policy, the Court will apply Georgia law.  Therefore, a factor that weighed strongly in the Court's decision not to exercise jurisdiction is no longer present.

      C.     Anticipation of Litigation

The Court's finding that this action was filed in anticipation of litigation is not a clear error of law.  (Dkt. [28] at 7-10).  However, as noted in the Order: "The Court is cognizant that an anticipatory filing does not mandate dismissal, but rather 'remains one equitable factor among many that a district court can consider in determining whether to hear a declaratory judgment action.' Manuel, 430 F.3d at 1135-36." (Id. at 10).

      D.     Entirety of the Controversy

In the Order, the Court noted that

> While this action includes Corestaff and Impellam as parties, it does not include CSG, CSGH, CER, and Guidant, all of whom are plaintiffs in the Delaware Action.  The Delaware action also

11

> includes Delaware state law claims not asserted here. While Plaintiffs Volt and Boone seek a judgment in this action declaring that the restrictive covenants contained in the Non-Compete are unenforceable, such a declaration will not fully resolve the controversy between the parties.

(Id. at 11). The Court's determination that this weighs in favor of dismissal does not represent a clear error of law or fact. While the claims asserted in the Delaware Action may be asserted in this Court as counterclaims because they arise from the same nucleus of operative facts, Plaintiffs failed to make this argument in their Response to the Motion to Dismiss [18].[8]

### E.   Exercise of Jurisdiction

The Order stated:

The Court is cognizant that there are factors that weigh in favor of exercising jurisdiction over this declaratory judgment action. Most compellingly, Boone is a Georgia citizen who entered into the Employment Agreement in Georgia, and under the Employment Agreement worked primarily from Georgia. It may be that this forum provides greater access to relevant documents and sources of proof. It is not clear that this forum is more convenient than

---

[8] A motion for reconsideration is appropriate if necessary to call the Court's attention to controlling precedent "which could not have been adduced during the pendency of the motion." Escareno v. Noltina Crucible and Refractory Corp., 172 F.R.D. 517, 520 (N.D. Ga. 1994) (quoting In re Oil Spill by the Amoco Cadiz, 794 F. Supp. 261, 267 (N.D. Ill. 1992). A motion for reconsideration cannot be used to "raise legal argumentation which could have been heard during the pendency of the previous motion." In re Oil Spill, 794 F. Supp at 267.

12

> Delaware for the parties or witnesses. Granted Boone is a resident of Georgia, but no single corporate entity involved in this dispute has its principal place of business in the state. Further, Jones, with whom Boone negotiated and signed the Employment Agreement and Non-Compete resides in the United Kingdom. When considering the totality of the circumstances, particularly that this action was filed in anticipation of the Delaware Action, that the Delaware Action encompasses the entirety of the present dispute, including parties and claims not present in this action, and that this Court would need to apply Delaware law, the Court will decline to exercise its jurisdiction under the Declaratory Judgment Act.

(Dkt. [28] at 15-16). In addition to the aforementioned factors that weigh in favor of exercising jurisdiction, because the Court now finds that it would not apply Delaware law to determine the enforceability of the Non-Compete, and because the claims set forth in the Delaware Action may be asserted in this action, the Court will exercise its jurisdiction under the Declaratory Judgment Act.[9] Plaintiffs' Motion for Reconsideration is **GRANTED**, and upon reconsideration, Defendants' Motion to Dismiss [7] is **DENIED**. Therefore the

---

[9] "The factors relevant in deciding whether to hear a declaratory judgment action are equitable in nature." Manuel v. Convergys Corp., 430 F.3d 1132, 1135 (11th Cir. 2005)(citation omitted). Some relevant factors include: (1) the convenience of the witnesses; (2) location of documents and access to sources of evidence; (3) convenience of the parties; (4) the locus of operative facts; (5) a forum's familiarity with the governing law; (6) the weight accorded a plaintiff's choice of forum; and (7) trial efficiency and the interests of justice, based on the totality of the circumstances. Id. at 1135 n.1.

13

Court will examine the merits of the Motions [5, 8, 26] it previously denied as moot.

## II.    Plaintiffs' Motion for Summary Judgment [5]

Plaintiffs' Complaint [1] seeks a declaration that the restrictive covenants are unenforceable, as well as preliminary and permanent injunctive relief preventing the enforcement of the restrictive covenants. (Dkt. [1] at 27-28). Because the Court has already found that one of the sub-parts of the Non-Compete is unenforceable under Georgia law, none of the restrictive covenants contained in the Non-Compete are enforceable. See Uni-Worth Enters. v. Wilson, 261 S.E.2d 572, 575 (Ga. 1979) (holding that if any part of a non-compete agreement is unenforceable, the entire agreement is unenforceable). However, Plaintiffs' request for a declaratory judgment may be barred by the doctrine of unclean hands. "[T]he declaratory judgment and injunctive remedies are equitable in nature and other equitable defenses may be interposed." Abbot Labs. v. Gardner, 387 U.S. 136, 155 (1967) abrogated on other grounds by Califano v. Sanders, 430 U.S. 99, 105 (1977). "Unclean hands generally prevents the court from even considering the merits of plaintiff's claims." West v. West, 825 F. Supp. 1033, 1049 (N.D. Ga. 1992) (citation omitted). To establish the defense of unclean hands, a defendant must:

14

"First, . . . demonstrate that the plaintiff's wrongdoing is directly related to the claim against which it is asserted. . . . Second, . . . the defendant [must] show that it was personally injured by [the] conduct." Calloway v. Partners Nat'l Health Plans, 986 F.2d 446, 451 (11th Cir. 1993).

Defendants offer two primary arguments in support of their defense of unclean hands. First, Defendants argue that "Boone entered into the Non-Compete intending not to abide by its terms." (Dkt. [15] at 19). Rather, he "indicated that he intended to abide by the Non-Compete," and neither he nor his attorney, R. Jason D'Cruz, "ever stated that they believed the Non-Compete at issue to be unenforceable." (Id.) Second, "Defendants suspect Boone has kept lists of customers, key employees, and other proprietary and confidential information belonging to Corestaff, which he secured after deciding to join Volt, but before notifying Corestaff of his resignation." Neither argument constitutes a sufficient defense of unclean hands such that a declaratory judgment concerning the Non-Compete should not be entered. As to the First, even assuming the veracity of the claim, "in an arms-length business or contractual relationship there is no obligation to disclose information which is equally available to both parties." S. Intermodal Logistics, Inc. v. Smith & Kelly Co., 379 S.E.2d 612, 614 (Ga. Ct. App. 1989) (citation omitted). As to

15

Case 1:11-cv-01175-RWS   Document 35   Filed 08/03/11   Page 16 of 19

the second, even assuming that Boone has kept lists of customers, key employees, and other proprietary and confidential information, this claim does not arise out of the Non-Compete, but is more properly considered under the Employment Agreement. Paragraph 10 of the Employment Agreement [1-1] directly addresses confidential information, and Defendants may have a cause of action pursuant to its breach if Boone has retained confidential information. Additionally, given Boone's positions within the U.S. Companies, Defendants may have claims against Boone for breach of fiduciary duty. Nonetheless, neither argument offered by Defendants constitutes an adequate defense of unclean hands.

Plaintiffs' Motion for Summary Judgment is **GRANTED in part**, and **DENIED in part**. The restrictive covenants contained in the Non-Compete Agreement are unenforceable and may not be enforced against Boone. However, as the Court has noted, Defendant has claims, whether or not asserted in the Delaware action, that may be properly pursued in this forum. Therefore, the Court will not grant an injunction preventing Corestaff from prosecuting an action against Volt or Boone, arising from his employment with Volt.

Plaintiffs filed their Motion for Summary Judgment [5] before Defendants even made an appearance in this action. Defendants will be given

16

(Rev.8/82)

an opportunity to file an answer to Plaintiffs' Complaint and assert counterclaims, to the extent it is not based upon the enforceability of the restrictive covenants.  Having now ruled on Plaintiffs' Motion for Summary Judgment [5] and Defendants' Motion to Dismiss [7], Plaintiffs' Motion to Stay Discovery [26] is **DENIED as moot**.

### III.   Defendants' Motion to Disqualify [8]

Defendants argue that the representation of Plaintiffs by R. Jason D'Cruz and Morris, Manning & Martin, LLP violates the Georgia Rules of Professional Conduct.  Rule 1.9 states: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation."  Defendants assert that disqualification is warranted because D'Cruz and Morris Manning provided legal advice and counsel to Corestaff and Impellam in matters involving employment agreements and restrictive covenants–specifically the enforceability of non-compete and non-solicitation provisions under the laws of Georgia and other states.  Plaintiff Boone contends that D'Cruz and Morris Manning never provided Corestaff with advice regarding Boone's employment with Corestaff and that advice provided to

17

Corestaff in regards to non-competition and non-solicitation clauses involved materially different provisions.

Boone reads Rule 1.9 far too narrowly. The legal advice and counsel D'Cruz and Morris Manning provided to Corestaff concerning employment agreements containing restrictive covenants, particularly those to be governed by Georgia law, is "substantially related" to their representation of Boone in this matter, which primarily concerns the enforceability of the restrictive covenants contained in Boone's Non-Compete with Corestaff. Therefore, Defendants' Motion to Disqualify [8] is **GRANTED**. R. Jason D'Cruz and Morris, Manning & Martin, LLP are **DISQUALIFIED** from continuing to act as counsel for Plaintiff Boone in this action. Further, Jason D'Cruz and Morris, Manning & Martin, LLP are **PROHIBITED** from assisting Volt and/or its counsel in this action.

## Conclusion

For the aforementioned reasons, Plaintiffs' Motion for Reconsideration [30] is **GRANTED**, Plaintiffs' Motion for Hearing [33] is **DENIED**, Defendant's Motion to Dismiss [7] is **DENIED**, Defendants' Motion to Disqualify [8] is **GRANTED**, Plaintiffs' Motion for Summary Judgment [5] is

**GRANTED in part**, and **DENIED in part**, and Plaintiffs' Motion to Stay Discovery [26] is **DENIED as moot**.

**SO ORDERED**, this  3rd  day of August, 2011.

_____
**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)