**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

JAMES E. BOONE and VOLT :
INFORMATION SCIENCES, :
INC., :
 :
  Plaintiffs, : CIVIL ACTION NO.
 : 1:11-CV-1175-RWS
v. :
 :
CORESTAFF SUPPORT :
SERVICES, INC. and :
IMPELLAM GROUP PLC,

  Defendants.

## ORDER

 This case comes before the Court on Defendants' Motion for

Certification to Supreme Court of Georgia, or for Entry of Judgment under Rule

54(b), and for Stay [37].  After considering the record, the Court enters the

following Order.

### Background

 Plaintiffs filed this action on April 22, 2011 seeking a declaration that

restrictive covenants contained in a non-compete agreement ("Non-Compete")

[1-2] entered into between James E. Boone and Corestaff Support Services,

Inc.[1] ("Corestaff") in association with an employment agreement ("Employment Agreement") [1-1] are unenforceable as a matter of law and seeking injunctive relief preventing Defendants from enforcing the covenants, instituting an action against Plaintiffs arising from Boone's employment with Corestaff, or precluding Boone's employment with Volt Information Sciences, Inc.[2] ("Volt"). (Dkt. [1] at 27).  Both the Non-Compete and Employment Agreement were signed by Boone and Defendants at the offices of Corestaff and Impellam in Atlanta, Georgia.  (Dkt. [18] at 1).

Boone began employment with Corestaff, as its President and CEO, in December 2008 by entering into the Employment Agreement.  (Complaint, Dkt. [1] at ¶¶ 16, 17, 30).  In association with the Employment Agreement, Boone signed the Non-Compete, which, among other things, restricts his engagement or participation in the business of staffing services and temporary employment services or any other business in which Corestaff and its affiliates engage in, upon leaving Corestaff.  (Id. at ¶¶ 18-29).  As President and CEO of Corestaff, Boone lived and worked in Georgia.  (Id. at ¶ 33).

---

[1] Corestaff is a California corporation with its principal place of business in Texas.  (Dkt. [1] at ¶ 3; Dkt. [7-4] at ¶ 6).

[2] Volt is a New York corporation with its principal place of business in New York.  (Dkt. [1] at ¶ 2).

On April 11, 2011, Boone hand-delivered to Cheryl Jones, Impellam Group PLC's[3] ("Impellam") Chairman and Boone's boss, sixty days written notice of his intent to resign his employment with Corestaff.  (Id. at ¶ 34). Jones informed Boone that Defendants "will definitely enforce the [NCA]." (Id. at ¶ 37).  Boone's positions with Volt–including group CEO of ProcureStaff Technologies Ltd., a subsidiary of Volt, and CEO of Volt Consulting Group, a unit of another Volt subsidiary–will be based in Georgia. (Id. at ¶ 41).  In the course of his employment with Volt, Boone will solicit, or attempt to solicit, current or former Corestaff customers to purchase competing products and services from Volt and solicit the employment of former employees or agents of Corestaff or Impellam and its subsidiaries.  (Id. at ¶¶ 45, 46).  If the restrictive covenants in the Non-Compete are enforceable, Boone's activities on behalf of Volt will violate one or more of these covenants.  (Id. at ¶ 47).  Believing that Defendants would take legal action to prevent Boone from working for Volt, Plaintiffs filed the present action.  (Id. at ¶ 49).

---

[3] Impellam is a public limited company that is organized in England and Wales and has its principal place of business in Luton, United Kingdom.  (Dkt. [1] at ¶ 4; Dkt. [7-4] at ¶ 8).

On May 6, 2011, Corestaff and Impellam, Defendants in this action, along with Corporate Employment Resources, Inc.[4] ("CER"), Guidant Group, Inc.[5] ("Guidant"), Corporate Services Groups Holdings, Inc.[6] ("CSGH"), and The Corporate Services Group, Ltd.[7] ("CSG") (collectively the "Delaware Plaintiffs"), filed suit against Plaintiffs in a Delaware court ("Delaware Action").  (Complaint in Delaware Action, Dkt. [7-4]).  CER, Guidant, and Corestaff are all subsidiaries of CSGH (collectively the "U.S. Companies").  (Id. at ¶¶ 5, 12).  CSGH is a wholly owned subsidiary of CSG, which is a wholly owned subsidiary of Impellam.  (Id. at ¶¶ 5, 7).  After entering into the Employment Agreement and Non-Compete, Boone was elected by the written consent of CSG to be a director of CSGH and was elected by written consent of CSGH to be a director on the boards of Corestaff, CER, and Guidant.  (Id. at ¶ 18).  Boone was also elected by the Boards of Directors of CSGH, Corestaff,

---

[4] CER is a Delaware corporation with its principal place of business in Texas. (Dkt. [7-4] at ¶ 3).

[5] Guidant is Delaware corporation with its principal place of business in Texas. (Dkt. [7-4] at ¶ 4).

[6] CSGH is a Delaware corporation with its principal place of business in Texas. (Dkt. [7-4] at ¶ 5).

[7] CSG is a limited company organized in England and Wales with its principal place of business in Luton, United Kingdom. (Dkt. [7-4] at ¶ 7).

AO 72A
(Rev.8/82)

and CER to serve as President of these companies and elected by the Board of

Directors of Guidant to serve as its Vice President.  (Id.).  In practice, he was

the head of Impellam's United States operations.  (Id.).  The Delaware Plaintiffs

filed suit to prevent Boone "from violating his fiduciary duties and contractual

obligations owed to [Delaware] Plaintiffs by taking their confidential

information and trade secrets and using them in the employ of a direct

competitor, Volt."  (Id. at ¶ 1).  The Delaware Action was subsequently

removed to the U.S. District Court for the District of Delaware.

Defendants sought to have this action stayed or dismissed in favor of the

Delaware Action.  Neither the Employment Agreement nor the Non-Compete

has a forum selection clause prescribing that suit be brought in Delaware.  Both

the Employment Agreement and the NCA have choice-of-law provisions stating

that Delaware law is to govern both agreements.  (Dkt. [1-1] at ¶ 15(a); (Dkt.

[1-2] at ¶ 4(d)).

On June 9, 2011, the Court issued an Order [28] granting Defendants'

Motion to Dismiss [7] and denying as moot Plaintiffs' Motion for Summary

Judgment [5], Defendants' Motion to Disqualify [8], and Plaintiffs' Motion to

Stay Discovery [26].  This Order was based in part on the Court's conclusion

that it would apply Delaware law–the law chosen by the parties to govern their

agreements–to determine the validity of the Non-Compete, which weighed

against exercising jurisdiction under the Declaratory Judgment Act and in favor

of the Delaware court adjudicating the dispute.  (Dkt. [28] at 12-15).  The Court

concluded that Delaware law would apply because Delaware law is "in accord

with Georgia's *new* public policy position on restrictive covenants in

employment agreements," as expressed in Georgia's new restrictive covenant

law, O.C.G.A. § 13-8-2.1(a), and constitutional amendment adopting that law.

(Id. (emphasis added)).

On June 17, 2011, Plaintiffs moved this Court to alter or amend, or, in the

alternative, reconsider its June 9 Order [30], partly on the basis of Georgia

Court of Appeals precedent that refused to apply foreign law to determine the

validity of a restrictive covenant, where application of the foreign law would be

contrary to Georgia's public policy on restrictive covenants as it existed *at the*

*time the agreement was entered into*.  (Dkt. [30] at 6-9 (citing Bunker Hill Int'l

Ltd. v. Nations Builder Ins. Servs., Inc., 710 S.E.2d 662 (Ga. Ct. App. 2011)

(emphasis added)).  After considering Bunker Hill and two other decisions of

the Georgia Court of Appeals,[8] the Court, by order dated August 3, 2011 [35],

---

[8] Specifically, the Court cited Gordon Document Prods., Inc. v. Serv. Techs., Inc., 708 S.E.2d 48 (Ga. Ct. App. 2011) and Cox v. Altus Healthcare & Hospice, Inc., 706 S.E.2d 660 (Ga. Ct. App. 2011) as support for the proposition that in analyzing

held that it made a clear error of law in its June 9 Order when it failed to compare Delaware law to Georgia's public policy as it existed at the time the parties entered into the Non-Compete.  Accordingly, the Court changed the focus of its analysis and found that Delaware law would not apply, as application of Delaware law would violate Georgia's public policy prevailing at the time the Non-Compete was entered into.  Having found that Delaware law would not apply, the Court granted Plaintiff's Motion for Reconsideration [30] and, upon reconsideration, denied Defendant's Motion to Dismiss [7].

The Court also considered the merits of Plaintiffs' Motion for Summary Judgment [5], which it granted in part and denied in part.[9]  The Court found that the restrictive covenants in the Non-Compete were unenforceable as a matter of law and thus granted summary judgment to Plaintiffs on their claim for declaratory relief.  The Court denied summary judgment to Plaintiffs, however, on their claim for an injunction preventing Defendants from prosecuting an

---

whether the application of foreign law to determine the validity of a non-compete agreement conflicts with Georgia's public policy, courts must consider public policy as it existed at the time the agreement was entered into, rather than at the time the agreement is sought to be enforced.

[9] In this Order, the Court also denied Plaintiff's Motion for Hearing [33], granted Defendants' Motion to Disqualify [8], and denied Plaintiff's Motion to Stay Discovery [26] as moot.  (Id.).

action against Plaintiffs, given the Court's conclusion that Defendants had

counterclaims unrelated to the Non-Compete that properly could be asserted in

this Court.

In the Motion now before the Court, Defendants request that the Court

certify the following question of law to the Supreme Court of Georgia on

grounds that the question is dispositive of this action and no controlling

precedents exist in the decisions of the Georgia Supreme Court:

> In determining whether a designated choice-of-law provision in a
> restrictive covenant/ non-compete agreement contravenes Georgia's
> public policy, should the court look to Georgia's public policy in effect at
> the time of the Court's analysis and evaluation of the choice-of-law
> provision, or the public policy in effect at the time the agreement was
> entered into?

(Dkt. [37-1] at 9, 14).  In the alternative, Defendants move the Court to enter

final judgment under Federal Rule of Civil Procedure 54(b) on Plaintiffs' claim

for a declaratory judgment that the Non-Compete is unenforceable.  (Id. at 15).

In support of this request, Defendants argue that Plaintiffs' claim for

declaratory relief is final and separable from any claims that may remain in the

case–Defendant's counterclaims unrelated to the Non-Compete–and that

Defendants will be irreparably harmed if forced to await resolution of their

counterclaims before appealing the Court's ruling regarding the Non-Compete.

8

(Id. at 17, 21).   Defendants also request a stay of this action pending either of the above forms of relief.  (Id. at 23).

## Discussion

### I.  Certification to the Georgia Supreme Court

Federal courts have discretion to certify "'novel, unsettled questions of state law'" to the state's highest court for resolution.  Pittman v. Cole, 267 F.3d 1269, 1289 (11th Cir. 2001) (quoting Arizonans for Official English v. Arizona, 520 U.S. 43, 79 (1997)).  Accordingly, "where there is doubt in the interpretation of state law . . . a federal court should certify the question to the state supreme court to avoid making unnecessary Erie 'guesses' and to offer the state court the opportunity to interpret or change existing law."  Gulfstream Park Racing Ass'n. v. Tampa Bay Downs, Inc., 399 F.3d 1276, 1279 (11th Cir. 2005) (internal quotations and citation omitted).  In determining whether to exercise its discretion to certify a question to the state court, a federal court should consider the following factors:  the closeness of the question, considerations of comity in light of the particular issue and case, and the practical limitations of the certification process, including significant delay.

<u>Florida ex rel. Shevin v. Exxon Corp.</u>, 526 F.2d 266, 274-75 (5th Cir. 1976).[10]

The most important of these factors is the first. <u>Id.</u> Thus, where there are sufficient sources of state law "to allow a principled rather than conjectural conclusion," the certification process should not be invoked. <u>Id.</u> at 275. <u>See also</u> <u>Smigiel v. Aetna Cas. & Sur. Co.</u>, 785 F.2d 922, 924-25 (11th Cir. 1986) (declining to certify question to state supreme court, reasoning, "Although we are *Erie*-bound, we may exercise an option to make an educated guess as to how the Florida courts would resolve the issue. . . .  We find that we are sufficiently educated by the available Florida authority to allow our exercise of that option.") (internal citation omitted).

As in <u>Smigiel</u>, the Court concludes that it is sufficiently educated by the existing Georgia authority to make a principled decision as to how the Georgia Supreme Court would rule on the issue presented in this case.  Indeed, the Court finds that the Georgia Court of Appeals has definitively settled the issue, as the Court explained in its August 3, 2011 Order.  In <u>Bunker Hill</u>, the Georgia Court of Appeals considered a non-compete agreement in an employment contract that contained choice-of-law and forum-selection provisions, which designated

---

[10] In <u>Bonner v. City of Prichard</u>, the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit decided before October 1, 1981. 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Illinois law to govern the agreement and provided for any disputes arising out of the agreement to be litigated in Illinois courts.  710 S.E.2d at 664-65.  The Court of Appeals's analysis began with the general rule that a forum-selection or choice-of-law provision will be invalid if it "contravenes a strong public policy of the forum in which suit is brought, whether declared by statute or judicial decision."  Id. at 665.  The Court of Appeals then analyzed the forum-selection provision in light of Georgia's public policy as it existed *when the agreement was entered into*.  Id.  As Georgia public policy at that time strongly disfavored non-compete agreements, and as an Illinois court applying Illinois law would likely enforce the non-compete at issue, the Court of Appeals found the forum-selection clause void.  Id. at 666-67.

The court in Bunker Hill reached this conclusion in spite of the Georgia legislature's passage of a new restrictive covenant law in 2009, favoring restrictive covenants, and a constitutional amendment adopting that law, which became effective on January 1, 2011 (collectively the "new law").  In doing so, the court stated, "Because the agreement at issue was entered into in 2008, we apply the law of restrictive covenants as it existed before the November 2010 ratification of an amendment to the Constitution of Georgia adopting O.C.G.A. § 13-8-2.1(a) into law."  Id. at 665 n.1 (citing Cox v. Altus Healthcare &

Hospice, Inc., 706 S.E.2d 660 (Ga. Ct. App. 2011)).  In Cox, the Court of

Appeals explained,

> Now effective as a result of the ratification of an amendment to the
> Constitution of Georgia in the general election of November 2, 2010,
> O.C.G.A. § 13-8-2.1(a) authorizes covenants 'that restrain in a reasonable
> manner.'  However, Ga. L. 2009, p. 231, § 4 provides that the new
> version of the statute 'shall not apply in actions determining the
> enforceability of restrictive covenants entered into before' the
> ratification.  We therefore apply the law of restrictive covenants as it
> existed before that event.  'By both constitutional and legislative
> provision, the former law prohibited 'contracts or agreements in general
> restraint of trade.'

706 S.E.2d at 663-64 (internal citations omitted).  See also Gordon Doc. Prods.,

Inc. v. Serv. Techs., Inc., 708 S.E.2d 48, 52 n.5 (Ga. Ct. App. 2011) ("Our

analysis in this case is unaffected by any recent legislative proposals or

changes.").

Defendants argue in their Motion and Reply that Bunker Hill did not

decide the question at issue because its decision to consult Georgia public

policy as it existed at the time the restrictive covenants were entered into was

without analysis.  (Dkt. [37-1] at p. 11; Dkt. [47] at p. 5).  Defendants also

argue that Cox and Gordon Document Products are irrelevant to the question,

making much of the fact that neither case involved a choice-of-law provision.

(Dkt. [47] at pp. 5-6 ("But neither of those cases involved a choice-of-law

provision or discussed public policy.  Rather, they stood for the uncontroversial

proposition that the *statute itself* is not retroactive.").  The Court finds both

contentions to be without merit.

With regard to the latter, the Court finds it immaterial that neither <u>Cox</u>

nor <u>Gordon Document Products</u> considered the enforceability of a choice-of-

law provision in a non-compete agreement.  The court in both cases stated that

to determine the validity of a non-compete, courts should look to the law of

restrictive covenants as it existed at the time the non-compete was entered into.

The presence of a choice-of-law provision in a contested non-compete should

not change this analysis.  In fact, the Court finds it incongruous that a Georgia

court would apply old Georgia law, which disfavors restrictive covenants, in

deciding whether to enforce a restrictive covenant entered into before passage

of the new law, but would consult new public policy, which favors restrictive

covenants, in deciding whether to enforce a choice-of-law provision governing

the same restrictive covenant and that would give effect to that covenant.

Considering Georgia's current public policy in the latter case would have the

same effect as applying the new restrictive covenant law retroactively, which

Defendants agree is not permissible, (Dkt. [47] at 6).

13

With regard to the former contention, the degree of analysis presented in Bunker Hill is similarly irrelevant.  The Court of Appeals, faced with the same key facts as the Court in this case, plainly looked to Georgia public policy as it existed at the time the restrictive covenants were entered into to determine whether to give effect to the forum-selection and choice-of-law provisions governing those covenants.  This decision is sufficient guidance to enable the Court to resolve the question presented in a "principled rather than conjectural" manner.  Indeed, shortly after the parties submitted their briefs to the Court, the Middle District of Georgia was presented with the same issue and reached the same conclusion as this Court in Becham v. Synthes (U.S.A.), No. 5:11-CV-73, 2011 WL 4102816 (M.D. Ga. Sept. 14, 2011).  After a detailed analysis of the legislative history behind the new law, the Becham court, citing Bunker Hill, concluded that it must consider old public policy–that which prevailed at the time the non-compete agreement at issue was entered into–to determine whether to give effect to that agreement's choice-of-law provision.

Accordingly, the Court finds that the question at issue in this case is not so novel or unsettled as to require certification to the Georgia Supreme Court. Defendants' Motion for Certification is hereby **DENIED**.

14

## II.     Entry of Final Judgment under Rule 54(b)

In the alternative, Defendants move the Court to enter a final judgment

under Federal Rule of Civil Procedure 54(b) on Plaintiffs' claim for a

declaratory judgment that the Non-Compete is unenforceable.  Under Rule

54(b),

> When an action presents more than one claim for relief–whether as a
> claim, counterclaim, crossclaim, or third-party claim–or when multiple
> parties are involved, the court may direct entry of final judgment as to
> one or more, but fewer than all, claims or parties only if the court
> expressly determines that there is no just reason for delay.

Fed. R. Civ. P. 54(b).   The purpose of this Rule is to codify the historic

prohibition against piecemeal appeals, thus preserving the use of appeals for

final judgments and the "infrequent harsh case" in which the requirements of

the Rule are satisfied.  In re Se. Banking Corp., 69 F.3d 1539, 1547 (11th Cir.

1995).  Accordingly, courts should exercise their discretion to enter partial final

judgment under Rule 54(b) sparingly.  See, e.g., id. at 1548 ("The caseload of

the federal courts of appeals has grown faster than that of any other component

of the federal judiciary. . . .  A liberal construction of Rule 54(b) has a

tremendous potential to increase our caseload still more rapidly, because of the

rule's natural tendency to multiply appeals in a single case."); Ebrahimi v. City

of Huntsville Bd. of Educ., 114 F.3d 162, 166 (11th Cir. 1997) ("[W]e have

previously counseled district courts to exercise the limited discretion afforded by Rule 54(b) conservatively.").

In the Eleventh Circuit, a two-prong test governs the analysis of whether to enter partial final judgment under Rule 54(b).  Lloyd Noland Found., Inc. v. Tenet Health Care Corp., 483 F.3d 773, 777 (11th Cir. 2007).  First, the court must determine that the decision at issue is a "final judgment."  Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1, 7 (1980).  A "judgment" is a decision "upon a cognizable claim for relief," and it is "final" if it constitutes "'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'"  Id. (quoting Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 436 (1956)).  Second, the Court must determine that there is no just reason to delay the appeal.  Id. at 8.

Under the first prong of this test, the court must determine whether the decision at issue "'disposes entirely of a separable claim . . . .'"  Lloyd Nolan Found., 483 F.3d at 779.  The Eleventh Circuit has noted that the dividing line between one of multiple claims is "very obscure."  Id.  Nonetheless, "the touchstone for determining whether an entire 'claim' has been adjudicated for purposes of Rule 54(b) is whether that claim is 'separately enforceable' without 'mutually exclu[ding] or 'substantially overlap[ping]' with remedies being

sought by the remaining claims pending in the district court." Id. (quoting In re Se. Banking Corp., 69 F.3d at 1547).  Thus, where two claims seek "substantially similar relief," the resolution of one claim does not constitute a "final judgment" because the claims are functionally the "same" for purposes of Rule 54(b). Id. at 780.  Under this analysis, counterclaims are to be treated no differently from other claims: "Like other claims, their significance for Rule 54(b) purposes turns on their interrelationship with the claims on which certification is sought." Curtiss-Wright, 446 U.S. at 9.

If the court determines that a decision constitutes a "final judgment," the court must then determine whether there are nonetheless just reasons to delay the appeal. Id. at 8.  Under this second prong of the test, the court must consider the interests of efficient judicial administration and the equities involved in the particular case. Id.  The former consideration seeks to preserve the historic policy against piecemeal appeals, and the latter seeks to limit the use of Rule 54(b) for the "exceptional" case in which a litigant would suffer "unusual hardship" if required to await final disposition of the case before seeking appellate review. Ebrahimi, 114 F.3d at 166, 168.  Of particular relevance to the first consideration is the degree to which pending claims are legally and factually intertwined with the adjudicated claim that constitutes a

final judgment.  Curtiss-Wright, 446 U.S. at 8.  Thus where there is significant

factual overlap between the adjudicated and unadjudicated claims, courts should

be reluctant to use Rule 54(b).  Ebrahimi, 114 F.3d at 167.

Finally, if a court concludes that entry of final judgment under Rule 54(b)

is proper, that court should clearly articulate its reasoning and the legal and

factual findings that support its decision.  Id. at 166.  "The expression of clear

and cogent findings of fact is crucial because it not only facilitates appellate

review of a Rule 54(b) certification, but also assists the district court itself in

analyzing the interrelatedness of the claims and the equities of the situation."

Id.  Accordingly, when a proper basis for entry of final judgment is not readily

apparent, and the district court fails to clearly articulate its reasoning, the Court

of Appeals will dismiss the appeal for lack of a final judgment.  Id. at 166-67.

In this case, Defendants ask the Court to enter a final judgment as to its

grant of summary judgment in favor of Plaintiffs on the issue of the

enforceability of the Non-Compete.  Defendants argue that entry of final

judgment is proper because the only claims remaining in this case are

Defendants' potential counterclaims, which, by the terms of the Court's August

Order, may not be based on the enforceability of the Non-Compete.  Therefore,

Defendants contend, the counterclaims are "separable" as required under the

first prong of the Rule 54(b) test.  As to the second prong, Defendants argue

they will suffer irreparable harm if forced to await final disposition of this case

before seeking appellate review, as Plaintiff Boone in the meantime will be free

to directly compete against Defendants.  Defendants additionally contend that

judicial administrative interests favor an immediate appeal, as an immediate

appeal could allow the Court to avoid having to hold a second trial in the event

the Eleventh Circuit finds the Non-Compete enforceable.

Plaintiffs, on the other hand, contend that entry of final judgment is

premature given that Defendants have not yet answered the Complaint and

asserted their counterclaims.  That is, because the Court does not know what

Defendants' counterclaims are, the Court cannot compare the interrelationship

of the Non-Compete claims and Defendants' counterclaims as is required to

determine whether the Court's decision is a final judgment and whether there

are just reasons for delay.

The Court agrees with Plaintiffs that Rule 54(b) certification would be

premature at this point in the litigation.  Because Defendants have not raised

their counterclaims, the Court cannot make the factual findings required for

Rule 54(b) certification.  Specifically, without knowing what Defendants'

counterclaims are, the Court cannot analyze whether the counterclaims seek

substantially the same relief as the claims related to the Non-Compete and thus

whether the Court's decision regarding the enforceability of the Non-Compete

constitutes a final judgment.  For example, as Plaintiffs speculate (based on the

claims Defendants have raised in the Delaware action), Defendants'

counterclaims may seek to enjoin Boone's employment with Volt on grounds

unrelated to the Non-Compete.  In its August 3, 2011 Order, the Court

foreclosed the availability of injunctive relief in favor of Defendants based on

the Non-Compete.  Thus the counterclaims may seek a "substantially

overlapping" remedy as the adjudicated claim.

It is equally possible, on the other hand, and as Defendants vigorously

argue, that the counterclaims will seek different forms of relief or permit more

than one possible recovery and thus constitute "separable" claims for relief.

Indeed, the fact that the counterclaims may not pertain to the enforceability of

the Non-Compete supports Defendants' argument in this regard.  But at this

point, because Defendants have not asserted their counterclaims, the

interrelatedness of the claims is purely a matter of speculation.  The Court thus

is unable to undertake the threshold Rule 54(b) analysis.

Similarly, without knowing the substance of Defendants' counterclaims,

the Court cannot consider whether there is any just reason to delay an appeal in

AO 72A
(Rev.8/82)

this case, even assuming the claims are "separable."  In particular, the Court cannot determine whether allowing a direct appeal before resolution of the counterclaims would promote sound judicial administration, as the Court does not know the factual underpinnings of the counterclaims and whether piecemeal appeals would require duplicative fact-finding by the appellate court.  While this may be unlikely, as the Court's decision regarding the enforceability of the Non-Compete is purely a question of law and as the counterclaims may not pertain to the enforceability of the Non-Compete, *without knowing what the counterclaims are*, this is still a matter of speculation.

In sum, until Defendants assert their counterclaims, the Court cannot conclude that this is one of the rare cases in which departure from the historic federal policy against piecemeal appeals is proper.  In light of this fact, and given the Eleventh Circuit's caution that district courts should exercise their Rule 54(b) discretion conservatively, Defendants' request for entry of final judgment under Rule 54(b) is **DENIED**.

## III.   Request For Stay

Defendants also move the Court to stay proceedings in this action in the event Defendant's Motion for Certification or Motion for Entry of Final

AO 72A
(Rev.8/82)

Judgment is granted.  In light of the Court's denial of these requests for relief,

Defendants' request for a stay is hereby **DENIED as moot**.


### Conclusion

For the foregoing reasons, Defendant's Motion for Certification to the

Supreme Court of Georgia, or for Entry of Judgment under Rule 54(b), and for

Stay is **DENIED**.


**SO ORDERED**, this   17th   day of , 2011.


**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)